The ESTATE OF Burton Walter AMOS, by and through its Trustee, Walter Nelson AMOS, Plaintiff–Appellant,

v.

The CITY OF PAGE, ARIZONA, City of Page Police Department, Wayne Wright, Chief of Police, City of Page Police Department, Rick Yanke, Sergeant of the City of Page Police Department, James Bartell, an Officer of the City of Page Police Department, Morgan Bastien, an Officer of the City of Page Police Department; Michael Bouruff, Lieutenant of the City of Page Police Department; and Chata Cabral, Lieutenant of the City of Page Police Department, Defendants–Appellees.

No. 99–16214.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2000

Filed July 26, 2001

Jamie McAlister, Esq., Jamie McAlister Law Offices, LLC, Phoenix, Arizona, for the plaintiff-appellant.

David C. Lewis, Esq., Jones, Skelton & Hochuli, Phoenix, Arizona, for the defendants-appellees.

Before: WALLACE, FISHER, and RAWLINSON, Circuit Judges.

WALLACE, Circuit Judge:

Walter Amos (Trustee), trustee of the estate of his deceased son, Burton Amos (Amos), appeals from a decision of the district court dismissing his action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Trustee brought this 42 U.S.C. § 1983 action against the City of Page, Arizona, the City of Page Police Department, and several Page police officers (collectively, City), alleging that the City violated Amos's substantive due process and equal protection rights when police officers conducted a deficient and ineffectual search operation for Amos after he fled the scene of an automobile accident and disappeared into the desert. Trustee contends that the City deprived Amos of his right to life, personal security, and bodily integrity; that the City's discriminatory search policy caused Amos injury; and that the City's inadequate police training evidenced a "deliberate indifference" to the constitutional rights of Amos and caused him injury. The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

I

Because this is an appeal from the dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts alleged in the complaint. *Lee v. County of Los Angeles*, 240 F.3d 754, 764 (9th Cir.2001). On the night of October 12, 1996, Amos left his home in Glendale, Arizona, for Salt Lake City, Utah, to visit his father. Just south of Page, Arizona—approximately 270 miles north of Glendale—Amos's car crossed the center line of Highway 89 and collided nearly head-on with an oncoming vehicle. Both cars were severely damaged, and the other driver had to be cut from her car and was hospitalized for a lengthy period for injuries sustained in the accident.

When Page police officers arrived at the scene they were informed by witnesses that, immediately following the accident, Amos got out of his car and either walked, stumbled, or jogged into the desert. The officers halted civilian search efforts, instructing the people who had stopped at the scene to leave the accident site. Upon inspecting Amos's car, they discovered blood inside, and two officers began following a set of tracks leading into the desert which evidenced a person running or jogging, stumbling and kneeling, and going in circles. The officers cut short their search, however, when their flashlights lost power. A helicopter called to assist in the search quickly abandoned its effort due to concerns stemming from nearby power lines.

The police did not resume their search the next day, and no subsequent search was conducted until November 21, 1996, when Trustee arrived in Page expressing concern to the Page Police Department about the whereabouts of his son. The police agreed to search the area surrounding the accident site again but were unsuccessful (as they were when they searched two weeks later on December 4, 1996). Private search efforts conducted by Trustee were also fruitless. Amos's remains were ultimately discovered in a pile of rock debris at the bottom of Glen Canyon by European tourists in September 1999, al-

most one year after Trustee filed his complaint.

To assist in the search for Amos, Trustee retained the services of an attorney. On February 26, 1997, the attorney spoke with the Page City Attorney, who commented that because Page is a border town and is surrounded by the Navajo Reservation, it is common for drivers to flee the scene of an automobile accident in an attempt to cross into neighboring Utah or onto the Reservation—both within relatively easy striking distance on foot—where the Page Police Department does not have jurisdiction. The City Attorney explained that, in particular, Native Americans involved in car accidents often leave the scene, abscond to the reservation, and call the police the following day to report their vehicle as stolen. He indicated that this behavior is so common in the area that it is standard practice for the police not to conduct thorough searches for runaway drivers because they suspect most are Native Americans who will call in the next day.

## II

■ Trustee contends that the City deprived Amos of substantive due process rights to life, personal security, and bodily integrity, as guaranteed by the Fourteenth Amendment, when Page police officers "caused a private rescue to cease, when [they] assumed responsibility for the search by undertaking affirmative search actions, where [they] clearly knew or had reason to know ... Amos was seriously injured, and thereafter when [they] abandoned all pretense of searching." The issue before us is whether a deficient and ineffectual police search for a runaway driver involved in a motor vehicle accident is actionable under section 1983 as a deprivation of substantive due process rights. A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is reviewed de novo. *Monterey Plaza Hotel Ltd. Part-*

*nership v. Local 483 of Hotel Employees & Rest. Employees Union,* 215 F.3d 923, 926 (9th Cir.2000).

■ In general, the state is not liable for its omissions. *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). As the Supreme Court stated in *DeShaney:*

[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens.... The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

489 U.S. at 195, 109 S.Ct. 998.

■ There are two exceptions to the general rule that a state's failure to protect an individual from danger does not constitute a violation of the Due Process Clause. *Huffman v. County of Los Angeles,* 147 F.3d 1054, 1058 (9th Cir.1998). First, the "special relationship" exception states that "when the State takes a person into its *custody* and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being." *Huffman,* 147 F.3d at 1058–59 (internal quotation omitted) (alteration in original; emphasis added). Trustee clearly does not state a claim under this exception as Amos was never in the *custody* of the state; he fled the scene of the accident and disappeared before the police arrived on the scene. No authority supports Trustee's assertion that the police exercised "de facto custody"

over Amos by exercising geographic control over the surrounding area of the accident; we reject this contention.

■ The second exception to the *DeShaney* rule—the "danger creation" exception—"exists where the state affirmatively places the plaintiff in a dangerous situation." *Huffman,* 147 F.3d at 1059. The "'danger creation' basis for a claim ... necessarily involves *affirmative conduct* on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992) (emphasis added); *Huffman,* 147 F.3d at 1059.

■ To determine whether the Page police officers affirmatively placed Amos in danger, we must focus on "whether the officers left [Amos] in a situation that was more dangerous than the one in which they found him." *Munger v. City of Glasgow Police Dep't,* 227 F.3d 1082, 1086 (9th Cir.2000); *see also Penilla v. City of Huntington Park,* 115 F.3d 707, 710 (9th Cir.1997). For example, in *Munger,* where the plaintiffs' late son died of hypothermia,

> [t]he officers affirmatively ejected Munger from a bar late at night when the outside temperatures were subfreezing. They knew that Munger was wearing only a t-shirt and jeans, and was intoxicated, was prevented by the officers from driving his truck or reentering [the][b]ar, and was walking away from the nearby open establishments.

*Id.* at 1087. Present in *Munger,* and common to our cases recognizing a cognizable section 1983 claim under the "danger creation" exception, is an *affirmative act* by the police that leaves the plaintiff "in a more dangerous position than the one in which they found him." *Penilla,* 115 F.3d at 710 (police responded to a 911 call, found Penilla in urgent need of medical care, canceled the request for paramedics, moved him inside his house, locked the door, and left); *see also Kneipp v. Tedder,*

95 F.3d 1199, 1209 (3d Cir.1996) (police detained Kneipp, who was drunk, and let her walk home alone on a cold night).

■ In this case, Amos's car crossed the center line on a highway and collided with another car for reasons unrelated to the actions of any officer. The police officers arrived on the scene *after* the accident had occurred and *after* Amos had disappeared into the desert; there was no interaction between the officers and Amos. Thus, "[w]hile the State may have been aware of the dangers that [Amos] faced ... it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998. Amos was in great danger before the officers appeared. Although in theory a very poor rescue attempt could make those needing rescue worse off than if the attempt had not been made, the probability that the conduct of the police officers in this case actually made Amos worse off is extremely speculative. "If the defendants deprived [Amos] of anything it was of some right to competent rescue services. But ... there is no such right in the Fourteenth Amendment." *Jackson v. City of Joliet,* 715 F.2d 1200, 1205 (7th Cir.1983).

Trustee argues that the "danger creation" exception applies in this case because, while Page police officers did not *place* Amos in danger, they greatly increased his risk of danger when they called off civilian search efforts at the accident site and did not provide adequate replacement protection. For this proposition he relies upon *Ross v. United States,* 910 F.2d 1422 (7th Cir.1990), where the Seventh Circuit held that a deputy sheriff committed a constitutional tort by interfering with private rescue efforts to save a twelve-year-old boy who drowned in Lake Michigan. Even though two lifeguards, two firefighters, one police officer, and two

civilian scuba divers arrived at the scene immediately, the Deputy Sheriff barred all rescue attempts, asserting that it was county policy to permit only "authorized" fire department divers to carry out such a rescue. When the "authorized" divers arrived at the scene twenty minutes later, they retrieved the boy's body from the lake. *Id.* at 1424–25. The Seventh Circuit stated that the Deputy Sheriff was aware of a known and significant risk of death "yet consciously chose a course of action that ignored the risk." *Id.* at 1433. Such conduct, the court held, is reckless and actionable. The court based its decision on language from *Archie v. City of Racine*, 847 F.2d 1211, 1223 (7th Cir.1988) (en banc), where the court held that a cognizable constitutional injury occurs when the state "greatly increase[s] risk while constricting access to self-help." *Id.* The court in *Archie* reasoned that "[w]hen a state cuts off sources of private aid, it must provide *replacement* protection." *Id.* (emphasis added).

We need not decide whether we agree with the Seventh Circuit as *Ross* is not controlling.

*Ross* is an unusual case, and its egregious facts and "stunning abuse of governmental power," *Ross*, 910 F.2d at 1424, are distinguishable from the case before us. In *Ross*, both the child's location and risk of death were known, and well-equipped and trained would-be rescuers were on the scene and ready to begin rescue efforts when the Deputy Sheriff arrived and ordered them to stop. *Id.* at 1424–25. Thus, the chances of a successful rescue were high, and the link between the Deputy's conduct and the child's death was proximate. The Deputy Sheriff physically prevented rescue efforts, threatened to arrest scuba divers who said they would attempt the rescue at their own risk, and positioned his boat so as to prevent their dive. *Id.* at 1425. Under these circumstances, the court held that "a reasonable police officer in [the Deputy Sheriff's] position should have known that he could not use [his] authority to prevent private rescue efforts." *Id.* at 1433.

In the present case, Amos fled into the desert after colliding with another car at night on the highway. When the police arrived on the scene, his location and the extent of his injuries were unknown. Civilian "rescue" efforts consisted of little more than a few passing drivers who had stopped on the side of the road to help search the immediate surroundings for the missing driver. Trustee does not allege that any of the civilians possessed special safety training or skills, and there is no reason to believe that their rescue efforts would have been successful had the police not intervened. Thus, the facts in this case (as alleged by Trustee), while describing a bungled and ineffectual police search, are much less troubling than those in *Ross*, and do not demonstrate that the Page police officers were aware of a known and significant risk of death "yet consciously chose a course of action that ignored the risk." *Id.* at 1433. Unlike in *Ross*, the probability that the officers' conduct made Amos worse off is extremely speculative, and "the unlikelihood that [Amos] would have been saved ... if the state had not attempted to rescue [him] shows how artificial it is to argue that the defendants deprived [Amos] of [his life]." *Jackson*, 715 F.2d at 1205. While the police officers' search may have been incompetent, lacking in scope and duration, any danger that presented itself to Amos as a result of the state's action or inaction did not implicate due process. We affirm the district court's dismissal of Trustee's substantive due process claim.

### III

Trustee next contends that the City violated the Equal Protection Clause by se-

lectively withholding protective services from Amos because they believed he was a Native American. Trustee's complaint alleges that it is standard practice for the City of Page *not* to search for runaway drivers because the City believes that most runaway drivers are Native Americans who bolt to the Navajo Reservation after an accident and call the police shortly thereafter, reporting their cars as stolen. Further, Trustee alleges that the City *does* search for runaway drivers when they have reason to believe that they are white. He contends that Amos, who was white, was the victim of this discriminatory policy because the police officers mistakenly believed he was Native American and, thus, cut short their search effort. The district court held that Trustee does not have standing to assert a Fourteenth Amendment racial discrimination claim under section 1983 because (1) he asserts a challenge to an alleged policy that discriminates against a protected class of persons of which Amos was not a member, and (2) he is in no better position to bring this action than an individual who does belong to the protected class.

 Standing is a question of law reviewed de novo. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1148 (9th Cir.2000). To satisfy Article III's standing requirements, Trustee must show "(1) [Amos] has suffered an 'injury in fact' ...; (2) the injury is fairly traceable to the challenged action of the [City]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir.2001), *citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). In addition to these constitutional requirements, a party bringing a discrimination action must, as a prudential matter, assert his own rights and interests, not those of third parties. *See*

*Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1308 (9th Cir.1982), *citing Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 80, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). However, "[t]he Court has waived this standing requirement in some discrimination cases where it appears that a white person is the only effective adversary." *Id., citing Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969).

 At first blush, Trustee would thus appear to face a substantial standing hurdle because "[a] white plaintiff generally does not have standing under Section 1983 solely for the purpose of vindicating the rights of minorities who have suffered from racial discrimination." *Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir.1994). Following *Halet*, the district court held that Trustee does not have standing pursuant to the "only effective adversary" exception because he "is in no better position to challenge Defendants' alleged policy than a Native American."

However, the district court's analysis does not come to grips with Trustee's complaint. Trustee asserts Amos's *"own rights and interests,"* *Halet*, 672 F.2d at 1308 (emphasis added), to be free from discrimination and he "is not suing on behalf of anyone else," *Maynard*, 37 F.3d at 1403. This is not a third-party standing case. Therefore, *Halet* does not control. Trustee alleges that Amos was the *direct* target of the City's discrimination because the police officers mistakenly believed he was a Native American and, based on that belief, selectively denied him the City's protective services. Thus, this case falls outside the *Sullivan* line of cases, which addresses plaintiffs who are not members of a protected class but who allege injuries personal to them that stem from discrimination against people who do belong to a protected class. For example, in *Halet*,

the white plaintiff, whose family was denied an apartment due to a building's adults-only rental policy, alleged that the policy violated his right to live with his family and was racially discriminatory because it had a greater impact on minorities than whites. 672 F.2d at 1307. We held that the plaintiff did not have standing to challenge racial discrimination against minorities because "he [was] in no better position to bring [the] action than a black person denied an apartment because of minor children." *Id.* at 1308. In *Maynard,* the plaintiff, a city employee, discovered and disclosed irregularities in his department's hiring process and aided a black employee in complaining about the department's practices. 37 F.3d at 1402–1403. The plaintiff alleged that over the next few years his superiors "conducted an ongoing campaign of retaliation" because he aided a black person. *Id.* at 1400. We held that "[u]nlike the plaintiff in *Halet,* Maynard is not suing on behalf of anyone else. He [1] asserts his own right to be free from retaliation, [2] alleges injuries that are personal to him, and [3] is the only effective plaintiff who could bring this suit." *Id.* at 1403.

Unlike the plaintiffs in *Halet* and *Maynard,* Trustee does not allege an injury that is derivative of the City's discrimination. He alleges that Amos was the direct target of discrimination based upon mistaken racial identity. That Amos was actually white does not make that discrimination or its resulting injury less direct. Thus, for purposes of standing, Amos should be viewed as Trustee alleges the police officers viewed him: as a Native American. The City's alleged discrimination is no less malevolent because it was based upon an erroneous assumption. Accordingly, because Trustee is asserting Amos's own rights and interests to be free from discrimination, and contends that he was personally injured by the City's al-

leged discriminatory policy, we hold that Trustee has standing to bring this claim.

## IV

Last, Trustee alleges, pursuant to *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), that the City's inadequate police training deprived him of his constitutional rights. The district court dismissed Trustee's inadequate training claim based upon its dismissal of Trustee's due process and equal protection claims. Citing *Quintanilla v. City of Downey,* 84 F.3d 353, 355 (9th Cir.1996), the district court held that because "an individual may recover under § 1983 only when his federal rights have been violated," Trustee cannot bring a *Canton* claim because he suffered no constitutional harm.

■ To prevail on his *Canton* claim, Trustee must have sufficiently alleged that: (1) Amos was deprived of his constitutional rights by the City acting under color of state law; (2) that the City has customs or policies which amount to "deliberate indifference" to Amos's constitutional rights; and (3) that these policies were the "moving force behind the constitutional violations." *Lee,* 240 F.3d at 767 (internal quotations omitted); *see also Oviatt ex rel. Waugh v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992). "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Lee,* 240 F.3d at 768 (internal quotations omitted). However, "a public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the

plaintiff." *Quintanilla,* 84 F.3d at 355, *citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). If a person has suffered no constitutional injury at the hands of the police, the fact that the police department and city might have maintained a policy or custom authorizing constitutional violations "is quite beside the point." *Heller,* 475 U.S. at 799, 106 S.Ct. 1571.

Trustee sufficiently alleges that the City maintained a policy that "amount[ed] to deliberate indifference" to Amos's constitutional rights and that the policies were "the moving force behind the constitutional violation." *Lee,* 240 F.3d at 767. The only question is whether Trustee sufficiently alleges that the City's conduct deprived Amos of his constitutional rights.

Trustee alleges violations of Amos's substantive due process and equal protection rights under the Fourteenth Amendment. As discussed earlier, Trustee failed to state a claim that Amos's substantive due process rights were violated. However, because we remand for further proceedings on Trustee's equal protection claim, we reverse the district court's dismissal of Trustee's *Canton* claim and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED