Lora M. SAXTON, Plaintiff–Appellant,

v.

HOUSING AUTHORITY OF the CITY OF TACOMA; William Hunter, Executive Director of the Housing Authority of the City of Tacoma, Defendant–Appellee.

No. 91–36262.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1993.

Decided July 30, 1993.

John C. Purbaugh, Barbara Evans–Cordts, Alan Anderson, Puget Sound Legal Assis-

**882**

tance Foundation, Tacoma, WA, for plaintiff-appellant.

Everett Holum, McCarthy, Holum, Causseaux & Rourke, Tacoma, WA, for defendants-appellees.

Before: FARRIS, FERGUSON, and D.W. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

In this appeal, we consider whether a public housing tenant is entitled to a hearing before the denial of her request to add an additional family member to her lease. Appellant Lora Saxton ("Saxton") brought suit against the Housing Authority of the City of Tacoma and its Executive Director (collectively, "THA") after THA refused to restore her husband Ben Saxton ("Ben") to the family's lease. The district court granted summary judgment in favor of THA. Although we hold that Saxton was entitled to a hearing under the United States Housing Act, 42 U.S.C. § 1437 *et seq.* (West Supp.1992) ("Housing Act") and regulations, we affirm because we find that a hearing would not have made a difference in the outcome of this case.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Saxton has been a tenant of THA low-income housing since February of 1979, when she signed a lease for herself and her two children. In 1984, THA discovered that her husband Ben was also residing in the unit; in accordance with the THA policy in effect at that time, Ben was placed on the lease. Ben was removed from the lease in 1985, after his wife informed THA that he was in prison.

On March 1, 1990, Saxton informed THA that Ben had recently returned home and requested that his name be restored to the lease. Although it had once been THA's policy to admit additional family members as tenants without any investigation, in 1987 THA began to require these additional family members to undergo "a screening process much the same as admitting a new family under the preexisting requirements." Pursuant to this practice, THA met with the Saxtons and determined that Ben had spent the previous five years in prison for rape.[2] THA made a preliminary decision not to readmit Ben, which was confirmed after an "informal hearing" with other THA managers on March 9.

On March 19, Saxton was informed by letter that her request had been denied because Ben had "a history of criminal activity involving a crime of physical violence to persons or property." The letter also stated that she had a right to request a hearing within five days. Saxton requested such a hearing on March 21. However, THA responded only by clarifying its policy regarding criminal activity. No formal hearing was ever held. THA now acknowledges that its reference to a grievance hearing was erroneous; it was not and never had been THA's policy to provide hearings in such circumstances.

THA personnel observed Ben once again living in Saxton's unit in late May of 1990. Shortly thereafter, THA served Saxton with a "Notice to Comply With Lease or Quit." THA then refused her tender of rent and told her to leave the premises; however, the eviction threat was later withdrawn. Saxton subsequently filed this suit challenging THA's policies and practices and seeking declaratory and injunctive relief under 42 U.S.C. § 1983, the Housing Act, and regulations promulgated thereunder. On cross-motions for summary judgment, the district

---

1. Saxton also challenges THA's practice of requiring tenants to obtain prior consent for changes in family composition and asserts that THA's policy for admitting returning family members lacks the requisite specific criteria and standards. In light of our holding that the grievance procedures apply to these PHA decisions, we need not reach these additional contentions.

2. THA claims that Ben acknowledged only two convictions during this discussion. THA later discovered that he had pleaded guilty to four counts of rape, including one which involved a knife, in addition to a 1978 conviction.

court concluded that there were no genuine issues of material fact and granted summary judgment in favor of THA. Saxton timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992). "The evidence must be viewed in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact for trial, and whether the district court correctly applied the relevant substantive law." *Id.*

## DISCUSSION

I. *Housing Act and Regulations*

The United States Housing Act, 42 U.S.C. § 1437 *et seq.*, illustrates Congress' commitment to providing safe and affordable housing to low-income families.

It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit ... to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income....

42 U.S.C. § 1437. Pursuant to this policy, the Housing Act provides that the Secretary of Housing and Urban Development ("HUD") "shall by regulation require each public housing agency [ ("PHA") ] receiving assistance under this chapter to establish and implement an administrative grievance procedure" which meets a variety of procedural requirements. 42 U.S.C. § 1437d(k).[3]

The regulations require each PHA to establish a grievance procedure which applies "to all individual grievances ... between the tenant and the PHA." 24 C.F.R. §§ 966.-51(1)(a)(1), 966.52(a) (1992). The regulations define a "grievance" as "any dispute which a tenant may have with respect to *PHA action or failure to act* in accordance with the individual tenant's lease or PHA regulations which adversely affect the individual *tenant's rights, duties, welfare or status.*" 24 C.F.R. § 966.53(a) (1992) (emphasis added).[4] At the time of Saxton's request, THA had an existing grievance procedure which tracked the requirements contained in 24 C.F.R. §§ 966.-54–.57 (1992).

■ In addition to the broad definition of "grievance" contained in the regulations, the history of the Housing Act and regulations suggest that Congress intended the grievance procedures to apply to a wide range of situations. We agree with the approach taken by the District of Columbia Circuit in *Samuels v. District of Columbia*, 770 F.2d 184 (D.C.Cir.1985), which held that public housing officials could be sued under 42 U.S.C. § 1983 for systematically failing to provide grievance hearings to public housing tenants. The *Samuels* court traced the history of the grievance regulations, noting that in 1982 HUD proposed a revision which would have made the procedures applicable only to disputes over tenant selection and rent calculation. *Id.* at 190; 47 Fed.Reg. 55,689, 55,692 (1982). "In response to this proposal, Congress specifically amended the Act to require PHAs to establish and maintain an administrative grievance procedure for the resolution of *all tenant disputes concerning adverse PHA action.*" *Samuels*, 770 F.2d at 190 (emphasis added); Housing and Urban–Rural Recovery Act of 1983, § 204,

3. The HUD regulations reflect similarly broad objectives:

The purpose of this subpart is to set forth the requirements, standards and criteria for a grievance procedure to be established and implemented by [PHAs] to assure that a PHA tenant is afforded an opportunity for a hearing if the tenant disputes within a reasonable time any PHA action or failure to act involving the tenant's lease with the PHA or PHA regulations which adversely affect the individual tenant's rights, duties, welfare or status.

24 C.F.R. § 966.50 (1992).

4. Expressly excluded from the grievance procedure are class actions and suits between tenants which do not involve the PHA. 24 C.F.R. § 966.-51(b) (1992). The regulations also permit a PHA in a jurisdiction which requires pre-eviction court hearings to exclude certain eviction proceedings from the grievance scheme. 24 C.F.R. § 966.51(a) (1992). THA does not argue that any of these exclusions apply to Saxton's situation.

Pub.L. No. 98–181, 97 Stat. 1153, 1178, *codified at* 42 U.S.C. § 1437d(k). We agree.

## II. Application to Saxton's Case

■ At the heart of this dispute are the parties' differing characterizations of the process of adding family members to a lease. Saxton characterizes THA's decision not to readmit her husband as one affecting *her* rights as a tenant under the terms of *her* lease. In contrast, THA characterizes the dispute as involving Ben's application for admission to the housing complex, which was denied pursuant to THA's regular procedures. THA contends that the regulations do not apply because its behavior in the present case did not adversely affect Saxton's "rights, duties, welfare or status" and did not constitute "action or failure to act" regarding her lease. Throughout this litigation, THA has steadfastly argued that the decision not to add *Ben* to the lease did not and could not affect any of *Saxton's* rights.

We reject THA's attempt to cast this dispute as affecting the rights, duties, welfare or status of Ben alone. Ben is not a party to this litigation, and we are not asked to consider whether THA's practices violated any of *his* rights. Ben did not formally apply for readmission; the sole action which initiated this dispute was *Saxton's* request that he be added to *her* lease. The Housing Act and grievance regulations address the welfare and status of public housing *tenants*, not applicants. It is precisely these tenant interests that Saxton asserts have been affected here.[5]

Under a plain reading of the regulations, Saxton was entitled to a hearing because THA's decision affected her "rights, duties, welfare or status." As a member of the class of individuals whom the Housing Act is designed to benefit, Saxton has a constitutionally protected "property" interest in her THA housing. *See Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir.1982) (eligible applicants for Section 8 housing have sufficient property interests to entitle them to due process safeguards). As an existing tenant, Saxton has a stronger property interest than would a mere applicant for housing. *Id.* at 1217 (applicant has less weighty interest than someone "who is currently receiving benefits and is threatened with reduction or termination of those benefits").

■ Moreover, "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974). Decisions concerning family living arrangements fall within this protected sphere. *See Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (striking down a housing ordinance which limited occupancy of dwelling units to members of a restrictively defined "single family"). Saxton's request went to the heart of her family's living arrangements. Admittedly, the precise level of constitutional protection due such arrangements remains unclear.[6] Whether or not her interest rises to the level necessary to invalidate THA's practices on constitutional grounds, however, it is clearly the type of tenant interest to which the grievance procedures apply.

Saxton was also entitled to a hearing because the dispute concerned THA's action or failure to act in accordance with her lease. *See* 24 C.F.R. § 966.52(a) (1992). We are not persuaded by THA's argument that it took no "action or inaction" regarding the lease. While THA may not have *initiated* the requested lease change, it is undisputed that THA *denied* the request. Denying a request to add a family member to the lease is clearly

---

5. At oral argument, THA argued for the first time that the admission of an additional family member to a lease is a two-step process under which the family member must first apply and be deemed "qualified" for tenancy. We disagree. THA points to no regulation which requires a new family member to make a formal application. The regulations require only that *the tenant* report changes in family composition to the PHA. 24 C.F.R. §§ 960.209(a), 966.4(c) (1992). Indeed, THA's own policy requires only that a tenant obtain prior written permission to add a family member to the lease.

6. We need not, and explicitly do not, decide whether Saxton has a fundamental constitutional right to have her husband live with her, or whether the denial of a hearing violated her right to due process under *Mathews v. Eldridge*, 424 U.S. 319, 332–33, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).

an "action" regarding that lease.[7] THA cites no regulation which limits the grievance procedures to actions initiated by the PHA alone. Such a distinction would be illogical, and we decline to read it into the regulations today.

■ We therefore hold that a public housing tenant whose request to add a returning family member to the lease is denied is entitled to a grievance hearing under the procedures specified in 24 C.F.R. § 966.50 *et seq.* (1992). We conclude, however, that such a hearing could not have altered the result in the present case. Unbeknownst to THA, Ben had been convicted of rape in 1978; several years later, he pleaded guilty to four new counts of rape, including one which involved a knife. A history of criminal activity, particularly involving crimes of violence, is a legitimate consideration in decisions regarding public housing tenancy. *See, e.g.,* 24 C.F.R. § 960.205(b)(3) (1992) (history of criminal activity is relevant information which may be considered in selection process).[8]

Saxton has offered us no description of the type of evidence that she would have presented on Ben's behalf at the hearing. The record fails to reflect that any evidence would be sufficiently mitigating to warrant admitting for residence in his wife's public housing unit a five-time convicted rapist, just released from prison. THA, on the other hand, has established that such admission would contradict its duty to safeguard the health, safety, and welfare of its tenants. *See, e.g.,* 24 C.F.R. § 960.205(b) (1992) (tenant selection criteria). We therefore conclude that a hearing would have served no useful purpose and could not have affected the outcome.

**AFFIRMED.**

---

**7.** THA's behavior could also be characterized as "inaction," *i.e.,* a failure to add Ben to the lease. We agree with the District of Columbia Circuit that the distinction is of little use. *See Samuels,* 770 F.2d at 199 (rejecting "act/omission" distinction and holding that the procedures apply to "*any* adverse PHA 'action or failure to act' involving a tenant's lease or the PHA's regulations").

**8.** *But see Public Housing Occupancy Handbook: Admission* § 4–1(b)(11) (7465.1 Rev–2 1987) ("A criminal record should not automatically exclude an applicant from consideration."); 24 C.F.R. § 960.205(d) (1992) (if PHA receives unfavorable information about an applicant, it must also be willing to consider mitigating circumstances).