114 F.3d 135
 65 USLW 2801, 97 Cal. Daily Op. Serv. 3969,
97 Daily Journal D.A.R. 6762
 LEGAL SERVICES OF NORTHERN CALIFORNIA, INC., a non-profit
California corporation, Plaintiff-Appellant,
v.
Dixon ARNETT, Director of California Department of Aging;
Area II Agency On Aging, Defendants-Appellees.
 No. 95-17358.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1997.
Decided May 28, 1997.
 
 Gary F. Smith and Oren M. Sellstrom, Legal Services of Northern California, Woodland, California, and John F. Gianola, Legal Services of Northern California, Redding, California, for plaintiff-appellant.
 Theodore Garelis, Deputy Attorney General, Sacramento, California, for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California, William B. Shubb, District Judge, Presiding. D.C. No. CV-94-02070-WBS/PAN.
 Before: SCHROEDER, and O'SCANNLAIN, Circuit Judges; KELLEHER,* District Judge.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must determine whether a community legal services provider suffered a deprivation of federal statutory rights under the Older Americans Act when a State agency awarded a grant to a rival applicant.
 
 
 2
 * Legal Services of Northern California, Inc. ("LSNC") is a non-profit California corporation whose mission is to provide civil legal services without charge to the disadvantaged throughout Northern California.
 
 
 3
 The Older Americans Act of 1965 ("OAA" or "the Act") established a program of federal grants for State and community social services designed to assist needy older persons. 42 U.S.C. §§ 3001 et seq. A State is eligible for federal funding under the OAA if it designates an agency to develop and to administer a statewide plan for the provision of social services to the elderly. California designated its Department of Aging ("CDA")[1] to meet this requirement, which, as further mandated, divided the State into distinct planning areas. The Area II Agency on Aging ("Agency") is CDA's designated sub-state agency for the local administration and distribution of OAA funds for most of northern California, including Lassen, Modoc, Shasta, Siskiyou and Trinity counties.
 
 
 4
 Under the Act the State and the area agencies are required to develop plans which assure that legal services will be provided to the elderly. 42 U.S.C. §§ 3027(a)(15); 3026(a)(2)(C). The Act further specifies the kinds of legal services to be given priority in the plans,[2] and requires assurances that no legal assistance will be furnished with OAA funds unless the "grantee administers a program designed to provide legal assistance to older individuals with social or economic need." 42 U.S.C. § 3027(a)(15)(B). In addition, the plan must include assurances that services will be provided to low-income minority seniors "to the maximum extent feasible ... in accordance with their need for such services," 42 U.S.C. § 3026(a)(5)(A)(ii)(II), and that the grants will be awarded to the agency "best able" to provide the services, 42 U.S.C. § 3027(a)(15)(B).
 
 
 5
 In December 1993, the Agency published a request for proposals for the provision of legal services to the elderly with OAA funds. Two applicants responded with proposals: LSNC and the Senior Legal Center of Northern California. The Agency awarded the grant to the Senior Legal Center. LSNC appealed this decision through administrative procedures to both the Agency and CDA. Both appeals were denied.
 
 
 6
 In December 1994, LSNC filed a complaint in federal district court under 42 U.S.C. § 1983, alleging that the Director of CDA had deprived it of federal rights under the OAA. Specifically, LSNC alleged that the Agency and CDA had violated the OAA by failing to choose LSNC as the grantee on the grounds that it was "best able" to provide the services, and because its proposal included the provision of services to low-income minority elders "to the maximum extent feasible." The complaint sought an injunction ordering the Director to award the grant to LSNC and to take all reasonable and necessary steps to ensure that grants are awarded in accordance with the provisions of the OAA. LSNC further sought a declaration that the Director of CDA violated the OAA by failing to select LSNC for the grant.
 
 
 7
 The parties filed cross motions for summary judgment and the district court granted summary judgment against LSNC. The district court held that the OAA did not create any enforceable federal rights in unsuccessful applicants for grants. It based its holding on a determination that applicants such as LSNC are not intended beneficiaries of the OAA, and that the statutory terms LSNC sought to have enforced are too vague and amorphous to provide a judicially manageable standard. LSNC timely appealed.
 
 II
 
 8
 Does the OAA create enforceable rights in grant applicants? Section 1983 provides a cause of action against a State actor for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States." 42 U.S.C. § 1983. It is well established that § 1983 provides a private right of action for violations of federal statutes in some instances. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2505, 65 L.Ed.2d 555 (1980). However, § 1983 relief is available only if the statute creates enforceable rights and if Congress has not foreclosed such enforcement in the statute itself. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990).
 
 
 9
 In order to determine whether a particular statute creates rights enforceable in a § 1983 suit, we scrutinize the terms of the statute under a three part test. A statute creates a right enforceable under § 1983 if: (1) the statute was intended to benefit the plaintiffs; (2) the statute imposes a binding obligation on the government unit rather than merely expressing a congressional preference for a certain kind of conduct, and; (3) the interest asserted by the plaintiff is not so vague or amorphous that it is beyond the competence of the judiciary to enforce. Wilder, 496 U.S. at 509, 110 S.Ct. at 2517.
 
 
 10
 In carrying out this inquiry, we are to examine whether particular statutory provisions create specific enforceable rights, rather than considering the statute and purported rights on a more general level. Blessing v. Freestone, --- U.S. ----, ---- - ----, 117 S.Ct. 1353, 1360-61, 137 L.Ed.2d 569 (1997). LSNC argues that statutory provisions of the OAA which provide direction for selecting grantees create an enforceable right in the "best" applicant to be awarded the grant. It argues that these provisions meet the three-part Wilder test and thus create a right in grant applicants which is enforceable under § 1983.
 
 
 11
 * LSNC first argues that it is among the intended beneficiaries of the statute's provisions for the selection of service providers because it will benefit from a "proper" enforcement of the Act by being awarded a grant and having access to a network of other grantees. Courts have indeed found service providers to be among the intended beneficiaries of statutes which establish reimbursement rates. Id. at 510, 110 S.Ct. at 2517 (finding that medical services providers are among intended beneficiaries of the Boren Amendment requiring States to pay reasonable reimbursements for Medicaid patients); see also Arkansas Medical Society, Inc. v. Reynolds, 6 F.3d 519, 526 (8th Cir.1993) (holding that service providers may challenge State's decision to lower Medicaid reimbursement rates under § 1983); Little Rock Family Planning Services v. Dalton, 60 F.3d 497, 502 (8th Cir.1995), rev'd in part on other grounds, --- U.S. ----, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996) (concerning reimbursement for abortion services under the Hyde Amendment to the Medicaid Act).
 
 
 12
 However, LSNC cites to no authority holding that unsuccessful applicants for federal grants may be considered among the intended beneficiaries of a statute. LSNC contends it was included when Congress expressed its hope that the OAA would create a partnership of groups working towards the common goal of providing services to older Americans. 42 U.S.C. 3003(4). Since grantees would benefit from this network and from federal funding, LSNC argues that those seeking the grants are among the intended beneficiaries of the statute.
 
 
 13
 It may be that the grantee service providers will benefit from being selected for inclusion in the OAA grants program. But it is clear that Congress intended the statutory provisions at issue here to be for the benefit of elders in need of services rather than for the benefit of each group which competes for a grant. Nor does the fact that the OAA conveys benefits on selected grantees indicate a Congressional intent to benefit rejected grantees. Furthermore, it is not at all clear that LSNC would necessarily benefit from the injunction it seeks requiring the agencies to comply with the OAA selection criteria. See Blessing, --- U.S. at ----, 117 S.Ct. at 1361 , (finding support for its conclusion that individuals are not intended beneficiaries of a provision calling for "substantial compliance" with a statute when individuals are not assured of benefit from such compliance). We therefore decline LSNC's invitation to extend the scope of intended beneficiaries of the OAA to potential service providers who have been rejected from inclusion in the program.
 
 B
 
 14
 We likewise reject LSNC's contention that the statutory and regulatory provisions it seeks to have enforced under § 1983 provide sufficient guidance to allow judicial enforcement, the third factor specified in Wilder. Statutory provisions are not judicially manageable when they are "vague and amorphous such that it is beyond the competence of the judiciary to enforce." Wilder, 496 U.S. at 509, 110 S.Ct. at 2517 (internal citation omitted).
 
 
 15
 LSNC points to two sections of the OAA and its implementing regulations which it argues create a judicially manageable standard. First, the OAA requires each area agency to submit a plan assuring that it will "include in each agreement made" a requirement that the chosen service provider will "to the maximum extent feasible, provide services to low-income minority individuals in accordance with their needs for such services." 42 U.S.C. 3026(a)(5)(A)(ii)(II). Secondly, the State is required to submit a plan which contains assurances "that any grantee selected is the entity best able to provide the particular service." 42 U.S.C. § 3027(a)(15)(B). LSNC argues that the terms requiring services to the needy to the "maximum extent feasible" by the applicant "best able to provide" them are sufficiently defined in the statute and regulations so as to rescue the terms from vagueness.[3] The district court, however, found that the additional definitions merely recast the statute's general goals without providing guidance to courts in determining which applicant's proposal must be selected as a matter of law.
 
 
 16
 LSNC now asks us to use these statutory and regulatory provisions to declare that CDA has violated the OAA by awarding a grant to the Senior Legal Center rather than to LSNC because it is "best able" to provide services to low-income minority elders "to the maximum extent feasible." We respectfully decline this request. The cited provisions describe obligations to be imposed on the chosen service providers, not criteria which courts may employ to determine as a matter of law which applicant for a grant is "best."
 
 
 17
 For instance, LSNC argues that its proposal was clearly better than the Senior Legal Center's because it proposed to offer more of the services which the OAA described as priorities, and to provide services to more clients with social needs. Senior Legal Center chose to concentrate its services in the areas of greatest demand by local seniors. Its proposal included an estimate of fewer clients to be served because it concentrated on face to face meetings with seniors, which the Center found to be preferable to the telephone screening procedure favored by LSNC.
 
 
 18
 We are ill-equipped by the statute's terms to determine which of these two applicants is best able to provide the services or which will provide services to low-income minorities to the maximum extent feasible. While the statute does include a list of priorities, it does not require that each priority must be given the same emphasis. Nor does the term "maximum extent feasible in accordance with their need" indicate whether the term refers exclusively to quantitative measurements. It is at least arguable that fewer clients being served on a face to face basis would better fulfill the statute's goal than many clients served on a more superficial phone-in basis.
 
 
 19
 The statutory terms which LSNC would have us enforce are far different from the kinds of standards which courts have previously found to be judicially manageable. See e.g., Loschiavo v. City of Dearborn, 33 F.3d 548, 553 (6th Cir.), cert. denied, 513 U.S. 1150, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1994) (finding "unreasonable limitations" on satellite dish reception creates a workable standard); Lampkin v. District of Columbia, 27 F.3d 605, 612 (D.C.Cir.), cert. denied, 513 U.S. 1016, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994) (finding "best interest" of homeless children to be manageable where statute defines specific, detailed criteria); Miller by Miller v. Whitburn, 10 F.3d 1315, 1319-20 (7th Cir.1993) (finding that court is competent to determine whether operation is an "experimental procedures" and therefore excluded from Medicaid coverage); Marshall v. Switzer, 10 F.3d 925, 929 (2d Cir.1993) (holding that court may determine whether a statute requires State to pay for particular piece of automotive equipment because it will make a handicapped individual employable). Generally, these judicially manageable standards require the court to determine whether a specified standard has been satisfied in a particular instance.
 
 
 20
 In contrast, LSNC asks the courts to use the OAA's provisions to determine which member of a pool of applicants is "best" at satisfying the statute's goals. It also argues that every applicant for an OAA grant has the right to mount a similar challenge under § 1983 to the decisions of State and area agencies in selecting grantees. In practice federal courts would replace Congressionally designated agencies as decision makers under the Act. Nothing in the statute indicates that Congress intended such a result.
 
 C
 
 21
 Finally, LSNC argues that the statute's terms create a binding obligation on the CDA and the Agency. See Wilder, 496 U.S. at 512, 110 S.Ct. at 2519. Since LSNC is not among the intended beneficiaries of the OAA, and since the terms it seeks to enforce are vague and amorphous, it follows that Congress did not intend the State and area agencies to owe a binding obligation under such provisions to all applicants for grants.
 
 
 22
 The Supreme Court has held that an ambiguous statutory term precludes a finding that Congress intended to create an enforceable right which would be binding on the States. Suter v. Artist M., 503 U.S. 347, 363, 112 S.Ct. 1360, 1369, 118 L.Ed.2d 1 (1992). In Suter, the Court held that a term in the Adoption Assistance and Child Welfare Act requiring the States to make "reasonable efforts" to maintain family unity did not "unambiguously confer an enforceable right upon the Act's beneficiaries." Id. Since "reasonable efforts" would necessarily vary depending on the circumstances, the court held that the statute gave the States broad discretion as to how the goal was to be pursued. Id. at 360, 112 S.Ct. at 1368. See also Blessing, --- U.S. ----, ----, 117 S.Ct. 1353, 1362, 137 L.Ed.2d 569 (holding provision requiring "sufficient" staffing to fulfill specific functions is not judicially manageable).
 
 
 23
 Similarly, the OAA specifies many goals to be pursued in the provision of services to the elderly, but delegates to the designated agencies broad discretion as to how those goals may best be accomplished. Oversight of these efforts is left to the Assistant Secretary on Aging, who is given authority to withhold funding if the State's plan is inadequate. 42 U.S.C. § 3024.[4] There is nothing in the statute to suggest that Congress has "unambiguously" conferred an enforceable right against the States by the terms LSNC seeks to enforce.
 
 
 24
 We therefore conclude that the OAA creates no rights which are enforceable under § 1983 by LSNC.
 
 III
 
 25
 The CDA has requested attorneys' fees under 42 U.S.C. § 1988. Authorization for attorneys' fees under § 1988 is different for prevailing defendants in a civil rights action than for prevailing plaintiffs. Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir.1994), cert. denied, 513 U.S. 1000, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994). A prevailing defendant is awarded attorneys' fees only where the action is found to be "unreasonable, frivolous, meritless or vexatious." Id. (internal citation omitted). An appeal is considered frivolous when the result is obvious or the appellant's arguments of error are wholly without merit. Id.
 
 
 26
 While LSNC must have known that their position was unsupported by existing precedent, we cannot say that the action was frivolous. It is likely that LSNC was launching a good faith effort to advance a novel theory under our § 1983 jurisprudence. While we have rejected this attempt, LSNC's arguments were not wholly without merit. We therefore decline to award attorneys' fees to the prevailing defendants under § 1988.
 
 
 27
 The judgment of the district court is AFFIRMED. CDA's request for attorneys' fees is DENIED.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Dixon Arnett is currently the director of the California Department of Aging. This suit names him in his official capacity only
 
 
 [2]
 42 U.S.C. § 3027(a)(15)(E) provides that the plan shall contain assurances that area agencies "will give priority to legal assistance related to income, health care, long term care, nutrition, housing, utilities, protective services, defense of guardianship, abuse, neglect, and age discrimination."
 
 
 [3]
 The statute defines the term "social need" to include economic and non-economic factors, such as disabilities, language barriers, and isolation. 42 U.S.C. § 3002(29), (30)
 In addition, 45 C.F.R. § 1321.71(c) provides that:
 The area agency shall award funds to the legal assistance provider(s) that most fully meet the standards in this subsection. The legal assistance provider(s) shall:
 (1) Have staff with expertise in specific areas of law affecting older persons in economic or social need, for example, public benefits, institutionalization and alternatives to institutionalization;
 (2) Demonstrate the capacity to provide effective administrative and judicial representation in the areas of law affecting older persons with economic or social needs;
 (3) Demonstrate the capacity to provide support to other advocacy efforts, for example, the long-term care ombudsman program;
 (4) Demonstrate the capacity to provide legal services to institutionalized, isolated, and homebound older individuals effectively; and
 (5) Demonstrate the capacity to provide legal assistance in the principal language spoken by clients in areas where a significant number of clients do not speak English as their principle language.
 
 
 [4]
 42 U.S.C. § 3024 provides in part that "[i]f the Assistant Secretary finds that any State has failed to qualify under the State plan requirements of section 3027 ... the Assistant Secretary shall withhold the allotment of funds to such State."