**Sharon HILL, et al., Plaintiffs,**

v.

**SAN FRANCISCO HOUSING AUTHORITY, Defendant.**

**No. C 01–02711 CRB.**

United States District Court, N.D. California.

June 12, 2002.

---

Allison D. Daniels, Erickson, Beasley, Hewitt & Wilson, Oakland, CA, Vernon C. Grigg, III, Law Offices of De Mory & Grigg, San Francisco, CA, for plaintiffs.

Edwin J. Wilson, Jr., Erickson, Beasley, Hewitt & Wilson, Oakland, CA, for defendant.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Plaintiffs seek to hold defendant San Francisco Housing Authority liable under federal law for a death and injuries arising from a fire in a Housing Authority apart-

ment building. Defendant moves to dismiss on the ground that plaintiffs have not identified any enforceable federal rights. The issue presented is not whether plaintiffs have a remedy—they have filed three lawsuits in state court arising out of the same incident—but rather, whether in addition to their state law remedies they state a claim under federal law, 42 U.S.C. section 1983. After carefully considering the papers filed by the parties, including the parties' supplemental submissions, and having had the benefit of oral argument, defendant's motion to dismiss is GRANTED without leave to amend.

## BACKGROUND

Plaintiff Sharon Hill ("Hill") and the decedent, Austin Smith, Jr. ("Smith"), lived in the Protrero Terraces public housing development. Together they had a two-year old grandchild, Austin Smith, IV ("Austin"). On July 18, 2000, a fire broke out in the unit directly below their apartment while they and Austin were home. They attempted to escape down the only set of stairs, but could not do so. Hill dropped her grandchild out their third-floor window onto a concrete slab below. She followed by jumping out of the window. Both Hill and Austin were injured in their falls. Smith did not escape and died from the fire.

Hill, Austin, and the surviving adult children of Smith on behalf of his estate originally filed a single cause of action under section 1983 in this Court. After defendant moved to dismiss the complaint, plaintiffs filed a First Amended Complaint with four causes of action. The first three causes of action make claims under section 1983 based on defendant's violation of the federal Housing Act and regulations promulgated by the Department of Housing and Urban Development ("HUD"), and the fourth makes a claim under the Fourteenth Amendment. Defendant moves to dismiss all of the claims for failure to state a claim.

## STANDARD FOR A MOTION TO DISMISS

When considering defendant's motion to dismiss, the Court must accept plaintiffs' allegations as true and construe them in a light most favorable to the plaintiffs. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). The Court should not dismiss plaintiffs' claims with prejudice "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [plaintiffs'] claims which would entitle [plaintiffs] to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (per curiam).

## DISCUSSION

"Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Two decades ago, the United States Supreme Court held that section 1983 may be used to enforce violations of federal statutes as well as the Constitution. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). "Section 1983 is broad, providing as a general rule, a mechanism to enforce constitutional or statutory rights, with two exceptions. A plaintiff will not be permitted to bring a section 1983 action if (1) the statute does not create an enforceable right, privilege, or immunity, or (2) Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." *Buckley v. City of Redding, Cal.*, 66 F.3d 188, 190 (9th Cir.1995); *see also Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137

L.Ed.2d 569 (1997) ("In order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."); *Wilder*, 496 U.S. at 508–09 n. 9, 110 S.Ct. 2510 ("[W]e recognize an exception to the general rule that § 1983 provides a remedy for violation of federal statutory rights only when Congress has affirmatively withdrawn the remedy.").

Plaintiffs contend they state a section 1983 claim under the Fourteenth Amendment of the Constitution and various federal statutes and regulations. With respect to the statutory/regulatory rights, the first question is whether the statute and regulations create a federal right. If that question is answered in the affirmative, the burden shifts to defendant to show that Congress foreclosed a remedy under section 1983. *See Blessing*, 520 U.S. at 346–47, 117 S.Ct. 1353.

### A. The Statutory/Regulatory Rights Identified By Plaintiffs

Plaintiffs identify the Housing Act provision entitled "Housing quality standards," 42 U.S.C. section 1437d(f)(2), and certain of its implementing regulations, as the specific federal rights defendant violated. Section 1437d(f) provides:

(2) Federal standards

The Secretary shall establish housing quality standards under this paragraph that ensure that public housing dwelling units are safe and habitable. Such standards shall include requirements relating to habitability, including maintenance, health and sanitation factors, condition, and construction of dwellings, and shall, to the greatest extent practicable, be consistent with the standards established under section 1437f(o)(8)(B)(i) of this title. The Secretary may determine whether the laws, regulations, standards, or codes of any State or local jurisdiction meet or ex-

ceed these standards, for purposes of this subsection.

42 U.S.C. § 1437d(f)(2). In accordance with this statute, HUD adopted 24 C.F.R. section 200.925a which provides as follows:

§ 200.925a Multifamily and care-type minimum property standards.

(a) Construction Standards. Multifamily or care-type properties shall comply with the minimum property standards contained in the handbook identified in § 200.929(b)(2). In addition, each such property shall, for the Department's purposes, comply with:

(1) The applicable State of local building code, if the property is located within a jurisdiction which has a building code accepted by the Secretary under § 200.925a(d); or

(2)(i) The applicable State or local building code, and (ii) Those portions of the codes identified in § 200.295c which are designated by the HUD Field Office serving the jurisdiction in which the property is to be located, if the property is located in a jurisdiction which has a building code partially accepted by the Secretary; or

(3) The appropriate codes, as identified in § 200.925c(c), if the property is not located within a jurisdiction which has a building code accepted by the Secretary.

(b) Conflicting Standards. The minimum property standards contained in the handbook identified in § 200.929(b)(2) do not preempt state or local standards, nor do they alter or affect a builder's obligation to comply with any state or local requirements. However, a property shall be eligible for benefits only if it complies with all applicable minimum property standards, including referenced standards.

Plaintiffs also cite 24 C.F.R. section 965.805, subpart 1, which establishes requirements for smoke detectors, and 24

C.F.R. section 941.203 which reads as follows:

§ 941.203 Design and construction standards.

. . . .

(b) Projects must comply with:

(1) A national building code, such as Uniform Building Code, Council of American Building Officials Code, or Building Officials Conference of America Code; (2) Applicable State and local laws, codes, ordinances, and regulations; and (3) Other Federal requirements, including any Federal fire-safety requirements and HUD minimum property standards (e.g., 24 CFR part 200, subpart S, and § 941.208).

Plaintiffs' First Cause of Action alleges that defendant violated a San Francisco Housing Code requirement that entry doors in apartment buildings, such as those at Portrero Terraces, be fitted with a solid door and equipped with a self-closing device. Their Second Cause of Action alleges that defendant violated HUD regulations, California law, and the San Francisco Housing Code by failing to install smoke detectors wired to the electrical system of the building, rather than battery-operated detectors. The Third Cause of Action alleges violations of California law and the San Francisco Housing Code with respect to fire escapes and a second means of egress. The final Cause of Action alleges defendant violated plaintiffs' Fourteenth Amendment rights by acting with deliberate indifference and/or creating a risk of harm to Portrero Terraces residents. For the purposes of defendant's motion to dismiss, the Court will assume that the apartment unit was not in compliance with the above regulations and that such non-compliance was a cause of plaintiffs' injuries.

## B. Whether The Statute And Regulations Create Federal Rights

Courts "have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right." *Blessing*, 520 U.S. at 340, 117 S.Ct. 1353. The first factor is "whether 'the provision in question was intend[ed] to benefit the putative plaintiff.' " *Wilder*, 496 U.S. at 508, 110 S.Ct. 2510 (citation omitted). Second, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." *Blessing*, 520 U.S. at 340–41, 117 S.Ct. 1353. Third, "the statute must unambiguously impose a binding obligation on the States." *Id.* at 341, 117 S.Ct. 1353.

### 1. A federal right based on regulations

As a preliminary matter, the Court must consider whether a federal right may arise from a HUD regulation. Defendant contends that a federal right must be based on a statute and therefore the Court may look only to section 1437d(f)(2), and not its implementing regulations, to determine if plaintiffs have identified a federal right.

The Courts of Appeal are split on this issue. In *Harris v. James*, 127 F.3d 993 (11th Cir.1997), the Eleventh Circuit held that a regulation alone cannot create an enforceable federal right; instead, the plaintiff must demonstrate Congressional intent to create a particular federal right. "[I]f the regulation defines the content of a statutory provision that creates no federal right under the three-prong test, or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision, ... the regulation is too far removed from Congressional in-

tent to constitute a 'federal right' enforceable under § 1983." *Id.* at 1009. The Third Circuit reached a similar conclusion in *South Camden Citizens in Action v. New Jersey Department of Environmental Protection,* 274 F.3d 771 (3d Cir.2001). The court concluded that "a regulation alone— i.e., where the alleged right does not appear explicitly in the statute, but only appears in the regulation—may [not] create an enforceable federal right." *Id.* at 783; *see also Smith v. Kirk,* 821 F.2d 980, 982 (4th Cir.1987) ("An administrative regulation ... cannot create an enforceable § 1983 interest not already implicit in the enforcing statute.").

The Sixth Circuit has held, however, that because administrative regulations have the force of law they may create enforceable rights under section 1983. *See Loschiavo v. City of Dearborn,* 33 F.3d 548, 551 (6th Cir.1994). The Ninth Circuit has not directly considered the issue.

The Court does not need to definitively address the issue because plaintiffs are not relying on regulations alone; instead, they contend that 42 U.S.C. section 1437d(f)(2) creates a right to safe and habitable housing and the identified HUD regulations simply define the "content" of that right. In other words, the right to local code compliant housing set forth in the regulations is implicit in the statute. The statute directs HUD to adopt quality standards for public housing and further directs HUD to consider whether local housing/building codes are sufficient. Thus, the statute itself reflects Congressional intent to impose safety codes that may, in HUD's discretion, be identical to the applicable state and local codes.

In *Saxton v. Housing Authority of City of Tacoma,* 1 F.3d 881 (9th Cir.1993), for example, at issue was 42 U.S.C. section 1437d(k), which provides that HUD "shall by regulation require each public housing agency ... to establish and implement an administrative grievance procedure" which meets certain procedural requirements, such as notice and the questioning of witnesses. HUD subsequently issued regulations which, among other things, defined when a tenant has a right to the grievance procedure. The plaintiff brought suit under section 1983 alleging that the statute and regulation gave her a right to the grievance procedure with respect to the defendant's refusal to add her (felon) husband as a tenant. The Ninth Circuit, without much discussion, held that the plaintiff had an enforceable federal right under the statute and regulation. *Id.* at 883–84. Similarly, in *Buckley v. City of Redding, Cal.,* 66 F.3d 188 (9th Cir.1995), the Ninth Circuit held that the Federal Aid in Sport Fish Restoration Act and its interpretative regulations confer an enforceable right to access certain waterways for specified recreational purposes. *Id.* at 192.

The Supreme Court relied on regulations in addition to a statute in *Wright v. Roanoke Redev. & Housing Author.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). The plaintiffs alleged that the defendant public housing authority violated a Housing Act provision directing that a low-income family "shall pay as rent" a specified part of its income, and, in particular, a HUD regulation that defined "rent" as including a reasonable amount for the use of utilities. The defendant argued that neither the statute nor the regulations defining "rent" gave the plaintiffs an enforceable right. The 5–4 majority held that it "perceived little substance in this claim." It also held that "HUD interim regulations expressly required that a 'reasonable' amount for utilities be included in rent that a PHA was allowed to charge, an interpretation to which HUD has adhered both before and after the adoption of the Brooke Amendment. HUD's view is entitled to deference as a valid interpretation of the statute, and Congress in the course

of amending that provision has not disagreed with it." *Id.* at 430, 107 S.Ct. 766.

The *South Camden* regulation is distinguishable from those at issue here. The Third Circuit held that Environmental Protection Agency ("EPA") disparate impact regulations did not create a federal enforceable right because the statute from which the regulation was derived, Title VI, only proscribes intentional discrimination. 274 F.3d at 783. In *Harris,* the federal statute required states to submit to the Department of Health and Human Services for approval each state's plan for access to medical services for medicare patients. The Department then issued regulations requiring the states to provide transportation to the patients. A divided three-judge panel held that the statute itself did not create the right to transportation; it merely required states to submit plans for approval to the Department. 127 F.3d at 1011.

This is not a case where the regulations are too far removed from Congressional intent to create a federal right, or where the regulations go beyond explicating the content of the statute. Congress directed HUD to adopt regulations setting housing quality standards and to consider adopting local housing ordinances as such standards, and the regulations do just that. The critical issue, then, is whether section 1437d(f)(2), together with its implementing regulations, create a federal right.

### 2. The factors establishing a federal right

#### a. Intended to benefit the plaintiffs

■ The first factor is whether the statute and regulations are intended to benefit the putative plaintiffs. In *Wright,* the Supreme Court held that the intent of a Housing Act amendment which provided that tenants could be charged as rent no more and no less than 30 percent of their income was "undeniably" to benefit the tenants. 479 U.S. at 430, 107 S.Ct. 766. Ensuring safe and habitable housing "undeniably" benefits the residents of such housing, just as ensuring low rents benefits the persons paying such rents.

Nearly all federal laws and regulations, however, can be characterized as benefitting a particular segment of the public. Accordingly, in *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Supreme Court more precisely defined when a statute is intended to benefit plaintiffs for the purpose of creating a federal right. In *Blessing,* five mothers brought a lawsuit against Arizona's child support agency claiming they have an enforceable federal right to have Arizona's child support program achieve "substantial compliance" with the requirements of Title IV–D. *Id.* at 332–33, 117 S.Ct. 1353. The Supreme Court held that "the requirement that a State operate its child support program in substantial compliance with Title IV–D was not intended to benefit individual children and custodial parents, and therefore it does not create a federal right." *Id.* at 343, 117 S.Ct. 1353.

> Far from creating an individual entitlement to services, the standard is simply a yardstick for the Secretary to measure the systemwide performance of a State's Title IV–D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied. A State substantially complies with Title IV–D when it provides most mandated services (such as enforcement of support obligations) in only 75 percent of the cases reviewed during the federal audit period. 45 CFR § 305.20(a)(3)(iii) (1995). States must aim to establish paternity in 90 percent of all eligible cases, but may satisfy considerably lower targets so long as their efforts are steadily improving. 42 U.S.C. § 652(g). It is clear,

then, that even when a State is in "substantial compliance" with Title IV–D, any individual plaintiff might still be among the 10 or 25 percent of persons whose needs ultimately go unmet. Moreover, even upon a finding of substantial noncompliance, the Secretary can merely reduce the State's AFDC grant by up to five percent; she cannot, by force of her own authority, command the State to take any particular action or to provide any services to certain individuals. In short, the substantial compliance standard is designed simply to trigger penalty provisions that increase the frequency of audits and reduce the State's AFDC grant by a maximum of five percent. As such, it does not give rise to individual rights.

*Id.* at 343–44, 117 S.Ct. 1353.

Section 1437d(f) of the Housing Act is similar to the *Blessing* statute. The statute sets standards for the distribution of federal funds to the states, namely, to public housing agencies; indeed, section 1437d is entitled "Contract provisions and requirements; loans and annual contributions." The introduction to section 1437d(f) provides that "[e]ach contract for contributions for a public housing agency shall require that the agency maintain its public housing in a condition that complies with standards which meet or exceed the housing quality standards established under paragraph (2)." 42 U.S.C. § 1437d(f)(1). Paragraph (2) commands HUD to establish housing quality standards. Congress also directed that each public housing agency make annual inspections of its own public housing units to determine whether the units are maintained in compliance with HUD's regulations, and to make the results of the inspections available to HUD upon request. *See* 42 U.S.C § 1437d(f)(3).

If a public housing agency is not maintaining a particular unit or units in compliance with HUD's regulations, however, HUD cannot force the agency to comply with HUD's regulations with respect to any particular unit or individual, just as in *Blessing* the Secretary of Health and Human Services could not make the state child support agencies comply with her regulations with respect to any particular individual. For example, HUD could not order defendant to install entry doors in the Portrero Terraces with self-closing devices in accordance with the San Francisco Housing Code. Instead, if a public housing agency is in "substantial default" with respect to the covenants and conditions set forth in its contract with HUD, HUD may require the agency to convey title or possession of the problem units to HUD. *See* 42 U.S.C. § 1437d(g). Congress also required HUD to develop performance indicators which assist HUD in evaluating the performance of public housing agencies in a number of areas, including the agencies' inspection of units for maintenance or modernization and the extent to which the agency provides "acceptable basic housing conditions." *See* 42 U.S.C. § 1437d(j)(1)(G) & (J). If an agency is not performing satisfactorily under the indicators, HUD may designate the agency a "troubled" agency and take certain steps to improve the troubled agency. *Id.* § 1437d(j)(2).

These statutes reflect Congressional intent to ensure that federal public monies are distributed to state public housing agencies that, among other things, generally maintain public housing in accordance with certain quality standards. The statute and regulations do not create an individual entitlement to a public housing unit in a particular condition. If HUD finds that an agency is "troubled" or in "substantial default" of HUD's requirements, including housing quality standards, HUD can take certain steps to improve the performance of the agency or, if need be, to

take over the troubled public housing; however, the statute and regulations do not give HUD the authority to command compliance with HUD's housing quality regulations in any particular instance. Thus, even if a housing agency is not "troubled" and is not in "substantial default," there may still be units which do not meet all of HUD's requirements. Enforcement of the Housing Act and its regulations would not necessarily have benefitted these particular plaintiffs. *See Blessing,* 520 U.S. at 343–44, 117 S.Ct. 1353; *Legal Services of Northern California, Inc. v. Arnett,* 114 F.3d 135, 139 (9th Cir.1997). Accordingly, just as the statute in *Blessing* was not intended to benefit the individual recipients of child support, the record does not support the conclusion that Congress intended individual public housing tenants to have an enforceable federal right to a unit with, among other things, a hard-wired smoke detector. For this reason, section 1437d(f)(2) and the implementing regulations identified by plaintiffs do not create a federal right; therefore the statutory/regulatory section 1983 claims fail as a matter of law.

Defendant also argues that 24 C.F.R. section 982.406 demonstrates that HUD does not interpret section 1437d(f)(2) as creating a federal right. *See Wright,* 479 U.S. at 427, 107 S.Ct. 766 (finding a right to a certain rental rate based in part on evidence of HUD's view that tenants have a right to bring suit in federal court). That regulation provides:

> Part 982 does not create any right of the family, or any party other than HUD or the PHA, to require enforcement of the HQS requirements by HUD or the PHA, or to assert any claim against HUD or the PHA, for damages, injunction or other relief, for alleged failure to enforce the HQS.

This regulation evinces an intent by HUD not to have the regulations in Part 982

confer any enforceable federal rights. Part 982, however, is inapplicable to this case; it applies to Section 8 housing, not public housing units. *See* 24 C.F.R. Part 982 ("Section 8 Tenant Based Assistance: Housing Choice Voucher Program").

Plaintiffs argue that under the doctrine of *expresso unius est exclusio alterius,* the fact that HUD has not adopted a similar regulation with respect to the public housing program suggests that HUD interprets the statutes and regulations governing public housing units as creating enforceable federal rights. *See Leatherman v. Tarrant County Narcotics,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (holding that the fact that Federal Rule of Civil Procedure 9(b) requires a heightened pleading standard for some claims, but not for a section 1983 claim against a municipality, means that the Rules do not require a heightened pleading standard for such a claim).

Part 982 also does not assist plaintiffs. While courts are required to give deference to a federal agency's interpretation of a federal statute, *see Wright,* 479 U.S. at 430, 107 S.Ct. 766, HUD has not expressed any view on whether section 1437d(f)(2) creates a federal right. Its silence on the issue, in the absence of any other evidence, is insufficient to support the conclusion that HUD interprets section 1437d(f)(2) and its implementing regulations as creating a federal right. Moreover, in *Blessing* the Supreme Court cautioned that courts cannot broadly determine whether a statutory scheme, such as the Housing Act, creates a federal enforceable right. 520 U.S. at 342–43, 117 S.Ct. 1353. Instead, courts must examine the specific statute and/or regulations identified by the plaintiffs to determine if they create a federal right. *See Legal Services of Northern California,* 114 F.3d at 138 (courts must "examine whether particular statutory pro-

visions create specific enforceable rights, rather than considering the statute and purported rights on a more general level."). As is set forth above, HUD has not expressed any view on whether a violation of the particular regulations identified by plaintiffs create a federal right.

### b. Whether the statute and implementing regulations are too vague and amorphous

Plaintiffs fail to state a section 1983 claim for a second reason: the interest asserted by plaintiffs is " 'too vague and amorphous' such that it is 'beyond the competence of the judiciary to enforce.' " *Blessing*, 520 U.S. at 340–41, 117 S.Ct. 1353. Plaintiffs urge the recognition of a federal right that varies from public housing agency to public housing agency, depending on the content of the relevant local and state building codes. Thus, a right that might exist for residents of San Francisco public housing, such as the "right" to an entry door fitted with a solid door, would not necessarily exist for residents of Marin County public housing, just across the Golden Gate bridge. While federal courts often apply different state laws to federal claims, for example, the statute of limitations for a section 1983 claim differs depending on the state in which the claim arose, *see Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Court is unaware of any federal right that varies from locality to locality. Although federal courts are certainly competent at interpreting state laws, their competence would be tested by the array of local codes and thus the lack of relevant precedents. For this reason, too, plaintiffs cannot state a section 1983 claim based on defendant's alleged violation of various provisions of the San Francisco Housing Code.

### C. The Fourteenth Amendment Claim

■ In their Fourth Cause of Action plaintiffs allege that defendant violated the Fourteenth Amendment because "it acted with deliberate indifference and/or created significant risk of harm to residents, including the risk of harm caused by the actions of third parties." First Amended Complaint at ¶ 40. "As a general rule, members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir.1992). "This general rule is modified by two exceptions: (1) the 'special relationship' exception; and (2) the 'danger creation' exception." *Id.*

■ It is undisputed that plaintiffs were not in a "special relationship" with defendant; defendant was merely the landlord. *See Estate of Amos ex rel. Amos v. City of Page, Arizona*, 257 F.3d 1086, 1090–91 (9th Cir.2001) (holding that the special relationship exception did not apply because the decedent was not in defendants' custody). Thus, plaintiffs' claim survives only if it falls within the "danger creation" exception. Under that exception, when a state official's "conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim." *See Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir.1997) (holding that plaintiff stated a section 1983 claim against police officers who after examining plaintiff and finding him in medical need, canceled a 911 call to the paramedics; dragged plaintiff from his porch, where he was in public view, into an empty house; then locked the door and left him there alone); *see also Grubbs*, 974 F.2d 119 (holding that plaintiff stated a section 1983 claim against a supervisor at a state facility who placed plaintiff in danger by assigning her to work with an inmate sex offender who had a history of violent as-

saults against women; he subsequently raped and kidnapped her); *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989) (holding that plaintiff stated a section 1983 claim against a state police officer who caused a woman to be stranded in a high-crime area at night where she was subsequently raped).

Plaintiffs do not allege any ·affirmative conduct by defendant which placed them in danger. At most they allege that defendant failed to take steps which would have reduced the risk that plaintiffs would be injured in a fire caused by third persons, that is, they allege negligence. Such allegations are insufficient to state a violation of the Fourteenth Amendment as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED. As plaintiffs have already amended their complaint once, and have not identified any new statutes or regulations on which they could base their claims if granted leave to amend, the complaint is dismissed with prejudice.

**IT IS SO ORDERED.**